hmg.11.20.24



**U.S. Department of Justice**

*United States Attorney
District of Maryland
Northern Division*

| | | | |
|---|---|---|---|
| *Colleen E. McGuinn*<br>*Assistant United States Attorney*<br>*Colleen.McGuinn@usdoj.gov* | *Mailing Address:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *Office Location:*<br>*36 S. Charles Street, 4th Floor*<br>*Baltimore, MD 21201* | *DIRECT: 410-209-4823*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-0716* |

✓ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

November 20, 2024

5:19 pm, Jan 22 2025
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____TTD_____ Deputy

VIA EMAIL

Mr. Dennis Boyle, Esq.
1050 Connecticut Ave. NW
#500
Washington, D.C. 20036

  Re: <u>United States v. Sky Tiffany Lawson</u>
     Crim. No. BAH-22-219

Dear Mr. Boyle:

  This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Sky Tiffany Lawson (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **December 6, 2024**, it will be deemed withdrawn. The terms of the Agreement are as follows:

<u>Offenses of Conviction</u>

  1. The Defendant agrees to plead guilty to Counts One and Thirty-Eight of the Superseding Indictment, which charge the Defendant with (a) Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; and (b) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A; respectively. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

<u>Elements of the Offenses</u>

  2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Rev. May 2018

That on or about the time periods alleged in the Superseding Indictment, in the District of Maryland,

*Count One (Conspiracy to Commit Wire Fraud)*

a. The defendant and at least one other person entered into an unlawful agreement;

b. The purpose of the agreement was to knowingly execute or attempt to execute a scheme and artifice to defraud or to obtain money by means of materially false and fraudulent pretenses, representations and promises, and to use or cause an interstate wire as charged in the Superseding Indictment; and

c. The defendant knowingly and willfully became a member of the conspiracy.

*Count Thirty-Eight (Aggravated Identity Theft)*

a. the Defendant knowingly transferred, possessed, or used a means of identification of another person;

b. knowing that the means of identification belonged to another actual person;

c. during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to wit: wire fraud conspiracy or wire fraud, in violation of 18 U.S.C. §§ 1349 or 1343; and

d. the Defendant acted without lawful authority.

<u>Penalties</u>

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Maximum Prison | Minimum Prison Term | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 1349 | 20 years | N/A | 3 years | $250,000 or twice the gross gain or loss from the offense | $100 |
| 38 | 18 U.S.C. § 1028A | 2 years mandatory, consecutive | 2 years mandatory, consecutive | 1 year | $250,000 | $100 |

Rev. August 2018

      a.     Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

      b.     Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

      c.     Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

      d.     Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

      e.     Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

      f.     Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

<u>Waiver of Rights</u>

4.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

      a.     If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

      b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and

would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.     If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

      e.     If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The

Rev. August 2018

Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551 through 3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant stipulate and agree to the Stipulation of Facts set forth in Attachment A, which is incorporated by reference herein.

*Count One and Relevant Conduct:*

a.      This Office and the Defendant agree that the applicable base offense level is **7** pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2X1.1(a) and 2B1.1(a)(1).

b.      The parties further agree that there is an increase of **16 levels**, pursuant to U.S.S.G. § 2B1.1(b)(1)(I), because the loss exceeds $1,500,000, but does not exceed $3,500,000. (Subtotal: 23).

c.      The parties further agree that there is an increase of **2 levels**, pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved 10 or more victims. (Subtotal: 25)

d.      The parties further stipulate and agree that pursuant to U.S.S.G. § 3D1.2, Counts One and the relevant conduct described in the factual stipulation group for purposes of the advisory guidelines calculation, resulting in no increase to the overall adjusted offense level. (Subtotal: 25)

e.      This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1**-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this

Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

    f.    Thus, the parties anticipate a final offense level of **22** for Count One and the relevant conduct.

*Count Thirty-Eight (Aggravated Identity Theft)*

    g.    Pursuant to USSG §2B1.6, the guideline sentence for Count Thirty-Eight is two years' imprisonment, to be imposed to run consecutively to any term of imprisonment imposed for Count One.

    7.    There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

    8.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

    9.    At the time of sentencing, this Office and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a), and this Office agrees to recommend a sentence of no more than 2 years of incarceration, consecutive to any time already served. This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

    10.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Restitution

11. The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses, which the parties agree is at least $1.5 million, which the government will not oppose being joint and several with any co-defendants also ordered to pay restitution for the conduct described herein. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

### Forfeiture

12. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense of conviction, which the parties stipulate and agree is at least $34,000.

13. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in anything that constitutes money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

14. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

15. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

16. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

17. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

18. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

19.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Colleen Elizabeth McGuinn
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

12/17/2024
Date

Sky Tiffany Lawson

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

12/17/2024
Date

Dennis Boyle, Esq.

Rev. August 2018

## ATTACHMENT A

## STIPULATION OF FACTS

*The undersigned parties stipulate and agree that the following facts are true and accurate, and that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

The defendant Sky Tiffany Lawson (the "Defendant"), age 29, was a resident of Bowie, Maryland. Between approximately March 2020 and October 2021, in the District of Maryland and elsewhere, the Defendant knowingly and willfully conspired and agreed with others to commit wire fraud, in violation of 18 U.S.C. § 1343, by devising and executing a scheme to defraud the United States, multiple financial institutions, and multiple states, including California and Maryland, and causing the transmission of interstate and international wire communications, for the purpose of executing the fraud scheme. The object of the fraud conspiracy and scheme to defraud was to obtain money by filing fraudulent unemployment insurance ("UI") claims using the personally identifying information of victims and obtaining money from the United States government.

The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering from the economic consequences of COVID-19. From March 2020 to October 2021, the Defendant worked with his co-conspirators to fraudulently obtain COVID-19 related UI benefits. The Defendant and his co-conspirators used electronic messages, phone calls, electronic mail and other means to aggregate and exchange the personally identifiable information ("PII") of victims with each other, created fictitious or false email address and phone numbers for the victims, and used the fake emails and phone numbers in the fraudulent UI applications. The conspiracy and scheme to defraud victimized more than 10 real persons, who lived throughout the United States. Through the conspiracy and scheme to defraud, the members of the conspiracy fraudulently obtained **at least $1.5 million** from victim state agencies. The Defendant knowingly and willfully joined the conspiracy to accomplish its unlawful object and with the intention of sharing personal identifiable information of the victims with his co-conspirators and obtaining money by filing for fraudulent UI benefits in those victims' names.

In July 2020 the Defendant and Co-Conspirator One were communicating through text messages. On July 12, 2020, Co-Conspirator One texted the Defendant, "I got 500 for you… lemme send MD unemployment to your joint." On July 14, 2020, Co-Conspirator texted the Defendant again, "I got 500 if I send this shit to you." The Defendant responded, "the cards? I guess so… 802 Palatine place," which was the Defendant's street address.

On September 20, 2020, UI Benefits in the name of P.M. were applied for through the online portal using the Defendant's home address. The application claimed P.M. had not worked since March 2020 and was employed as an administrative assistant. The IP address linked to the application came back to the Defendant's residence.

On October 30, 2020, the Defendant texted Co-Conspirator One pictures of an envelope with the name of victim P.M. and the 802 Palantine Place address mailed from the Maryland Department of Labor and Licensing as well as a Maryland UI benefits card in the name of P.M. The Defendant wrote, "This is what you wanted?" and Co-Conspirator One replied, "You kno it."

On July 11, 2020, UI benefits were applied for in the name of S.C. using an address on Greig Street in Capitol Heights, Maryland. The application claimed that S.C. was a self-employed farmer. The real S.C. was in a memory care facility in Virginia since 2019, and her power of attorney husband never applied for benefits in her name.

On November 23, 2020, Co-Conspirator One texted the Defendant the PII of victim S.C. including her name, date of birth, social security number, security questions and answer along with the phone number for DLLR and a script to use while on the phone. The Defendant texted Co-Conspirator One back, saying, "S.C. is the name right… it won't let u call at all… its says you gotta do it virtual." The Defendant then sent a video of her dialing the DLLR number using the PII of S.C. and the script provided by Co-Conspirator One as well as the address on Greig Street. S.C.'s UI profile was funded and depleted of over $25,000.

The Defendant's mailing address was used for other UI benefits applications and mailings, including the real persons with the initials Y.Z, M.Q., and L.B. On February 16, 2021, Anne Arundel County Police executed a search and seizure warrant on the residence of Co-Conspirator One. During a search of his bedroom, investigators found UI debit cards in the name of S.C., M.Q.,Y.Z., L.B. along with 7 other cases. The profile for Y.Z. yielded a $41,300 depleted UI benefits account. The profile for M.Q. was depleted of UI benefits in the amount of at least $10,300. The UI benefits profile for L.B. was depleted over approximately $16,000.

Bank of America UI records revealed that the Defendant and her co-conspirators are connected to multiple UI profiles of actual victims whose identities were used to open accounts and obtain benefits without their permission. These victims are tied to texts and calls between the Defendant and his co-Conspirators over several months. The Defendant and her co-conspirators personally conducted transactions involving at least $1.5 million in UI benefits funds, and the Defendant obtained more than $34,000 from participating in the conspiracy.

SO STIPULATED:

_____
Colleen Elizabeth McGuinn
Assistant United States Attorney

    I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
Sky Tiffany Lawson
Defendant

    I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including this Factual Stipulation with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

_____
Dennis Boyle, Esq.
Counsel for Defendant

Rev. August 2018