

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Colleen E. McGuinn*  *Suite 400*  *DIRECT: 410-209-4803*
*Assistant United States Attorney*  *36 S. Charles Street*  *MAIN: 410-209-4823*
*Colleen.McGuinn@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-3091*

April 16, 2025

**VIA ECF**

Honorable Brendan A. Hurson
United States District Judge
District of Maryland
101 W. Lombard St.
Baltimore, MD 21201

      Re:    *United States v. Sky Tiffany Lawson*
             Criminal No.  BAH-22-219

Dear Judge Hurson:

On June 21, 2022, the Defendant was indicted in the United States District Court for the District of Maryland and charged with Count 1, Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349); Counts 20, Wire Fraud (18 U.S.C. § 1343); and Count 38, Aggravated Identity Theft (18 U.S.C. § 1028A). On November 30, 2022, a Superseding Indictment was returned with the same charges.  On January 22, 2025, the Defendant entered a plea of Guilty to Counts 1 and 38, Conspiracy to Commit Wire Fraud and Aggravated Identity Theft, respectively.

The sentencing hearing in the above-captioned matter is currently scheduled for May 2, 2025, at 11:00 a.m.  As calculated in the Presentence Investigation Report ("PSR"), ECF 335, the Defendant's offense level is 20 and her criminal history category is I, resulting in an advisory USSG sentencing range of 33 to 41 months of incarceration, followed by the 2-year mandatory minimum consecutive period of incarceration for Count 38.  The overall sentencing guidelines are therefore 57 to 65 months of incarceration.

The Government requests a sentence of 24 months of incarceration, consecutive to any time already served.  In addition to a period of incarceration, the Government requests a period of three (3) years of supervised release, restitution in the amount of $2,094,319.00, forfeiture in the amount of $25,000, and a special assessment of $100 for each count.

The Government submits that its requested sentence is sufficient, but no greater than necessary, to satisfy the purposes set forth in 18 U.S.C. 3553(a).

### I.  18 U.S.C. § 3553(a) Sentencing Factors

The Government's requested sentence of 24 months of incarceration is supported by the factors outlined in 18 U.S.C. § 3553(a).

### (1)  Nature and Circumstances of the Offense

First, as to "the nature and circumstances of the offense," under 18 U.S.C. § 3553(a)(1), the Government submits that the offense conduct was serious and victimized several individuals and entities. Moreover, the circumstances of the offense are compelling.

In the spring of 2020, Congress passed the Coronavirus Aid, Relief and Economic Security (CARES) Act, which provided for a variety of economic benefits to struggling Americans during a time of severe negative economic impact as a result of the COVID-19 pandemic. While most individuals were sheltering in place, taking care of loved ones, and often making tough financial sacrifices, the Defendant Aiyanna Washington collaborated with others to fraudulently obtain and use COVID-19 benefit money, specifically unemployment insurance (UI) benefits. The Defendant repeatedly took advantage of programs meant to help those in need; she did so for her own selfish purposes. The personal identifying information (PII) of real people were used and compromised during this scheme. These victims cannot fully know today the long term affects this breach will have on them and their financial security.

As detailed in her plea agreement, the Defendant worked very closely with one of her co-conspirators in particular, agreeing to allow her address to be used in the fraudulent application of UI benefits. The Defendant would text photos of the DLR mailings she received to her co-conspirator. She received the PII of victim S.C., including her name, date of birth and social security number; the Defendant then applied for the benefits in S.C.'s name. The Defendant even recorded herself trying to apply for benefits for S.C. It did not matter to the Defendant who S.C. was, whether or not she was an actual human who could suffer real consequences from this fraud. In fact, S.C. was a person who was in a memory care facility in Virginia, wholly reliant on her husband as power of attorney. S.C.'s information was used to benefit the Defendant with $25,000 in fraudulent funds.

The Defendant's mailing address was used in several other filings, meaning she had applied for and/or received the benefits cards that arrived at her home. The Defendant would then work in partnership with her co-conspirators to cash in on those debit cards. Victims M.Q., Y.Z. and L.B. were all listed as living at the Defendant's address; a total loss of over $65,000 was generated in their names.

As detailed in the plea agreement, the Defendant did play an active role in a total loss of over $2M from the COVID-19 CARES Act funds created at a time of a national health crisis not seen in 100 years. The Defendant received and used the PII of real people without regard as to how her crimes could impact their credit history or ability to apply for actual benefits if they had been needed.

### (2) The History and Characteristics of the Defendant

The Defendant has no prior convictions. She is considered a "zero point" offender and, under U.S.S.G. §§4C1.1(a) and (b), two levels have been deducted from her offense level.

The Defendant's reported childhood is unremarkable in as far as substance abuse, mental health, gambling, etc., in the context of understanding her motives for fraud and theft. In fact, she seemed to have a stable home environment and has an employment history that suggests she is capable of working and earning income. It would seem that the motives for this theft have nothing to do with substance abuse, care for a child or loved one, inability to work, or anything else that could help explain, though not excuse, why this occurred. The motivation appears to be purely based about greed and financial gain.

### (3) Need to Afford Adequate Deterrence to Criminal Conduct:

Under 18 U.S.C. § 3553(a)(2)(B), there is a need "to afford adequate deterrence to criminal conduct." A sanction needs to be imposed to send a signal to others who would contemplate engaging in wire fraud and aggravated identity theft. A sentence of 24 months of incarceration for this fraud scheme deters others.

General deterrence is particularly important sentencing factor in fraud cases such as this one because it is viewed to be effective. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence."); *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010)("[B]ank fraud, unlike an assault in a tavern or even domestic abuse, tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision.") The deliberate nature of fraud often renders it more difficult to uncover, since individuals engaged in fraud take affirmative steps to conceal their identities and conduct.

The pandemic led to a surge in identity theft and fraud against government programs in 2020 and thereafter, resulting in estimated hundreds of billions of total losses[1]. Despite its best efforts, law enforcement will be unable to catch and convict all of the opportunistic fraudsters who made off with taxpayers' funds during the pandemic. This case presents a worthwhile opportunity for the Court to impose a sentence that will grab the attention of those who may be considering similar crimes.

### (4) Need to Avoid Unwarranted Sentence Disparities:

Under 18 U.S.C. § 3553(a)(6), there is a need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Although Wire Fraud cases are not novel in this jurisdiction, the backdrop of the COVID-19 crisis in the United States from 2020 through at least 2022 is unique.

---

[1] *See* Richard Lardner et al, The Great Grift: How billions in COVID-19 relief aid was stolen or wasted, Associated Press, June 12, 2023, http://apnews.com/article/pandemic-fraud-waste-billions-small-business-labor-fb1d9a9eb24857efeb4611344311ae78.

3

In *United States v. Gladstone Njokem*, RDB-21-338, the defendant and his co-defendants conspired to impersonate victims in order to obtain money by submitting fraudulent claims for UI benefits. Their scheme amounted to a $1.3M loss and affected over 183 victims with regard to stolen PII. Judge Bennett imposed a sentence of 54M of incarceration in addition to the restitution and three years of supervised release. The defendant's criminal history category was a II.

In *United States v. Jerry Phillips*, TDC-22-073, the defendant and his co-defendant, Jaleel Phillips, were sentenced to 7 years and 30 months in prison, respectively. The men applied for UI claims as well as other loans, using the PII of victims. They were able to fraudulently obtain more than $1M in COVID-19 CARES Act Paycheck Protection Program (PPP) loan applications, Economic Injury Disaster loan (EIDL) applications and UI claims. Additionally, Jerry Phillips had a machine gun in his possession at the time of his arrest, which he had purchased as a "ghost gun" and modified. Both Jerry and Jaleel Phillips had a criminal history category of I.

In the *United States v. Keon Ball*, DKC-20-248, the defendant was sentenced to 66 months in prison in relation to a $715,000 wire fraud scheme that encompassed at least 10 victims of aggravated identity theft. The defendant applied for multiple COVID-19 CARES Act PPP loans using the names of the victims and perpetrated other types of frauds as well.

In a look across the country as to how various districts are sentencing COVID-19 related fraud cases committed during a time of national crisis, several cases are consistent with the Government's recommendation here and have yield significant sentences. *See, e.g., United States v. Joseph Marsell Cartlidge, Eric Alexander McMiller, and David Christopher Redfern*, 1:20-CR-340 (M.D.N.C. 2022) (receiving 72 months, 66 months, and 60 months of imprisonment, respectively for submitting fraudulent PPP and EIDL applications, obtaining $1.2M in loans); *United States v. Lola Kasali*, 4:20-MJ-1106 (S.D. Tex. 2022) (receiving 70 months of imprisonment for submitting two fraudulent PPP loan applications and obtaining $1.9M in loans); *United States v. Tarik Freitekh*, 3:20-CR-00435 (W.D.N.C. 2022) (receiving 87 months of imprisonment for submitting fraudulent PPP applications and obtaining $1.75M in loans) *United States v. Adam D. Arena*, 21-MJ-05134 (W.D.N.Y. 2022) (receiving 66 months of imprisonment for his role in fraudulently obtaining and laundering approximately $950,000 in pandemic loans).

In this case specifically, these co-defendants have received the following sentences:

Michael Makoge – 53 months
Dementrous Von Smith – 53 months
Christian Adrea – 36 months
Stephawn Watson – 53 months
Christopher Yancy – 63 months
Aiyanna Washington – 24 months

A sentence of 24 months is wholly consistent with the sentences imposed in this specific case, in this District, and in the United States for the type of fraud committed during a global pandemic.

## II. Defendant's Objections to the PSR

The Defendant, through her attorney, noted several objections to the PSR, ECF 335 at p. 18. Of concern is the Defendant's objection to the "offense level calculation" which was found to be a 20. *Id*. at ¶ 32. The plea agreement, ECF 306, provided an offense level calculation of 22, because the "zero-point offender" offense level reduction had not been applied, due to the need to first assess the criminal history computation. However, the Defendant seems to retro-actively object to the loss amount of "more than $1,500,000" (U.S.S.G. §2B1.1(b)(1)(I)), and the application of a 16-level increase to the base offense level.

The Government contacted the Defendant's attorney via email who clarified that his objections were meant to advocate for his client as to why a sentence below guidelines is appropriate, and not because he is taking issue with the guidelines or the plea agreement. To that end, the Government concedes that the Defendant did not directly receive an amount loss of just over two million dollars, but rather she was part of a large conspiracy that caused that loss amount; the Government agrees that the Defendant had a lesser role in the conspiracy as a whole. It is exactly for these reasons that the Government made the plea agreement that it has, in addition to weighing the Defendant's punishment against the sentences already imposed for the more liable members of the conspiracy.

## III. Victim Impact

The Government has notified the victims of the offense of the sentencing hearing; it is still unknown if some will submit victim impact statements, address the Court at sentencing, and/or attend the sentencing hearing. No victim impact statements have been received to date. Of course, as victims of the offense, they are entitled to do any/all of the above. See, 18 U.S.C. § 3771. As soon as the Government is aware, we will advise the Court.

## IV. Restitution Request

Pursuant to 18 U.S.C. § 3663A and U.S.S.G. §5E1.1, restitution shall be ordered in this case. As such, the United States respectfully requests that an Order of Restitution be entered, as part of the Defendant's sentence in this matter, in the total amount of $2,094,319, joint and several with the co-defendants. The Government will provide contact information for the payment of restitution to these victims to the Courtroom Deputy via a separate document.

## V. Forfeiture

The forfeiture amount is calculated to be $25,000. The Government will file a forfeiture order in advance of sentencing reflecting the total amount.

## VI. Conclusion

For the reasons set forth above, the Government respectfully submits that 24 months of incarceration, consecutive to the time she has already served, and 3 years of supervised release is

a reasonable sentence, and is sufficient, but not greater than necessary to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a)(2).

        Very truly yours,

        Kelly O. Hayes
        United States Attorney

        Colleen Elizabeth McGuinn
        Assistant United States Attorney

CC: Mr. Dennis Boyle, Esq.
    Ms. Paige Cameron, USPO